UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BARBARA KOWAL,

    *Plaintiff*,

v.

UNITED STATES DEPARTMENT OF
JUSTICE *et al.*,

    *Defendants*.

Civil Action No. 18-938 (TJK)

## MEMORANDUM OPINION AND ORDER

Barbara Kowal, a paralegal at the Federal Defender for the Middle District of Florida, filed this suit against the Department of Justice and the Drug Enforcement Administration under the Freedom of Information Act. Kowal requested all records from the DEA pertaining to Daniel Troya, a capital defendant that the Federal Defender represents in his post-conviction hearings, and to several of his codefendants. The DEA produced documents from its law enforcement records system but withheld some documents in whole or in part under several FOIA exemptions.

Defendants moved for summary judgment, arguing that they adequately searched for records, properly invoked certain FOIA exemptions to justify their withholdings, and met their duty to disclose all reasonably segregable portions of the records at issue. Kowal cross-moved for summary judgment, arguing that the DEA's search was deficient because it failed to use adequate search terms and check all relevant records systems, and that the DEA failed to adequately justify the FOIA exemptions at issue, improperly withheld information in the public domain, and failed to disclose all reasonably segregable information. The Court finds that the DEA conducted an adequate search, but that the record does not provide enough information to

determine whether it properly applied FOIA's exemptions, withheld information in the public domain, or produced all segregable portions of the records at issue. The Court will therefore grant Defendants' motion and deny Kowal's as to the adequacy of DEA's search, and otherwise deny the motions without prejudice.

## I.     Background

Kowal's office began representing Troya in capital post-conviction proceedings in April 2015. ECF No. 1 ("Compl.") ¶ 6. A few months later, she sent a request under the Freedom of Information Act (FOIA) and Privacy Act of 1974 (PA) to the Drug Enforcement Administration (DEA) seeking documents related to Troya's prosecution. Kowal requested "all documents, files, records, etc. pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of . . . Daniel Troya (a/k/a "Homer"), DOB: 04/22/1983" and cited his federal criminal charges. *Id.* ¶ 11. Kowal also requested the same documents for five of Troya's codefendants. *Id.* One week later, Kowal sent an amended request, including a Certification of Identity signed by Troya that permitted Defendants to release Troya's records to Kowal's office. *See* ECF No. 1-2.

The DEA processed 418 pages in response to Kowal's request. *See* ECF No. 20-14; ECF No. 20-15. All responsive records were exempt from PA disclosure under PA exemption (j)(2). *See* ECF No. 20-1 ("Hertel Decl.") ¶ 34. Exemption (j)(2) permits heads of agencies to exempt from disclosure any system of records with a principal function of any activity pertaining to criminal law enforcement. 5 U.S.C. § 552a(j)(2). The DEA also invoked FOIA Exemptions (b)(6) and (b)(7)(C), (D), (E), and (F) to withhold some documents in whole or in part. *See* Hertel Decl. ¶ 28. Exemption (b)(6) protects information in personnel and medical files when disclosure would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In contrast, each (b)(7) exemption applies only to information compiled for law

enforcement purposes: Exemption (b)(7)(C) protects against unwarranted invasions of personal privacy, Exemption (b)(7)(D) protects the identities of confidential sources or information furnished by confidential sources, Exemption (b)(7)(E) protects law enforcement techniques and procedures, and Exemption (b)(7)(F) protects against endangering the life or physical safety of any person. *Id.* §§ 552(b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), (b)(7)(F).

The DEA supported its motion with the declaration of Angela D. Hertel, the DEA's acting FOIA and PA Unit Chief, which explains in detail the DEA's response to Kowal's request. *See* Hertel Decl. The DEA maintains all of its criminal law enforcement investigative records in the Investigative Reporting and Filing System (IRFS or JUSTICE/DEA-008). *Id.* ¶ 6. A second system, the Narcotics and Dangerous Drugs Information System (NADDIS), electronically indexes IRFS files, allowing the DEA to locate IRFS records from any DEA office worldwide. *Id.* ¶ 7. The DEA searched for files responsive to Kowal's request using Troya's name and date of birth, which are two of the three fields by which NADDIS indexes an individual's records. *Id.* ¶¶ 7, 30.

The DEA also provided two *Vaughn* indices[1] that assert exemptions for each page or range of pages in the responsive files. *See* ECF No. 20-14; ECF No. 20-15. The indices work in tandem with the Hertel Declaration, which describes the types of general information withheld under each exemption. *See* Hertel Decl. ¶¶ 32–58. Each entry in the indices provides the applicable page range in the responsive file and gives a short document description, a document date, whether the document was withheld in full or in part, and a list of exemptions claimed for

---

[1] The first *Vaughn* index covers 342 pages that the DEA originally processed in response to Kowal's request. The second index covers the additional 76 pages that the DEA processed after Kowal provided a Certification of Identity that enabled the DEA to release information about one of Troya's codefendants.

3

the document.  *See* ECF No. 20-14; ECF No. 20-15.  The rationales for each redaction are limited.  The DEA explains that some redactions are self-explanatory (*e.g.*, a redaction under the "Supervisor" field on the DEA-6 form protects the Supervisor's name).  *See* ECF No. 20-14 at 2.  Some entries describe redactions that are not self-evident, and all entries refer to the indices' general exemption explanations, which in turn refer to the Hertel declaration.  *See id.* at 1, 4.

## II.     Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Summary judgment is appropriate when, "viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor."  *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

FOIA "requires federal agencies to disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions."  *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008).  It creates a "strong presumption of disclosure," and "places the burden on the agency to justify the withholding of any requested documents."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  If information is already in the public domain, an agency cannot invoke an otherwise valid exemption to withhold it.  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001).  When an agency withholds portions of a record, it must still disclose "[a]ny reasonably segregable portion . . . after deletion of the portions which are exempt."  5 U.S.C. § 552(b).

A court reviewing a FOIA action may grant summary judgment based on the agency's declarations "[i]f an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within

4

the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).  But the agency may not rely on "conclusory and generalized allegations of exemptions" in its affidavits.  *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973).

**III.   Analysis**

   **A.   Whether the DEA's Search was Adequate**

Kowal first challenges the DEA's search.  An adequate FOIA search is one that is "reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C. Cir.1990).  A court judges a FOIA search "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search" because "particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  The agency need not search all its records systems, but it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  An agency that restricts its search to certain records systems must "explain in its affidavit that no other record system was likely to produce responsive documents." *Id.*  Agencies do not need to use every possible search term, *Canning v. U.S. Dep't of State*, 346 F. Supp. 3d 1, 14 (D.D.C. 2018), and "there is no bright-line rule requiring agencies to use the search terms proposed in a FOIA request," *Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009).

To show that it has conducted an adequate search, an agency must submit a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68.  Agency declarations to that effect are given "a presumption of good

faith," and "[a]n adequate affidavit can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defs. of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Trans Union LLC v. FTC,* 141 F. Supp. 2d 62, 69 (D.D.C. 2001)). "[P]ositive indications of overlooked materials" may suggest that a search was inadequate, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999), but the search is judged by whether it was "reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  If the agency meets the standard of reasonableness, "a court need not quibble over every perceived inadequacy in an agency's response." *Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009).

As explained below, the Court finds that DEA's search was adequate; none of Kowal's arguments show otherwise.

First, Kowal argues that the DEA has failed to explain why it only searched IRFS, *see* ECF No. 23 at 19–20, when it maintains additional records systems like DEA Planning and Inspection Records (JUSTICE/DEA-010) and DEA Operation Files (JUSTICE/DEA-011).  *See* ECF No. 32 at 5.  But the DEA explained that IRFS houses "[a]ll DEA criminal law enforcement investigative records," and that "[r]ecords from other DEA record systems that are related to an individual's involvement in, or association with, a DEA intelligence operation or civil, criminal or regulatory investigation are also retained in IRFS."  Hertel Decl. ¶ 6.  Given that Kowal's request was for documents "pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of" Troya," which would all appear to be housed in IRFS,  and further, that that DEA has asserted that its query of IRFS was reasonably calculated

6

to return all responsive records, *see* ECF No. 28 at 4, 6, the Court finds its search adequate on this score.

Second, Kowal contends that the DEA's search was deficient because it only searched NADDIS for Troya's name and birth date, and not for his alias, "Homer," despite Troya's indictment specifically referencing the alias. ECF No. 23 at 18. But NADDIS only indexes individuals by name, Social Security Number, or date of birth, Hertel Decl. ¶ 7, so a search by name and birth date is "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). While including the alias—if that was even technically feasible—might have made the search even more thorough, omitting the alias did not make the search unreasonable, especially considering the "unique, identifying terms already used." *Ahanmisi v. U.S. Dep't of Labor*, 859 F. Supp. 2d 7, 12 (D.D.C. 2012).[2]

Third, Kowal argues that the search was inadequate because it did not produce any of the over two hundred items that she possesses and that she alleges would have been responsive to her request. *See* ECF No. 23 at 20; ECF No. 23-14. That Kowal identifies specific items makes her argument stronger than if she merely suspected that more records exist. *See* ECF No. 23-14. But critically, "the adequacy of a FOIA search is not judged on results, but rather on the good faith search itself." *Carter, Fullerton & Hayes, LLC v. FTC*, 637 F. Supp. 2d 1, 7 (D.D.C. 2009).

---

[2] Kowal cites *Canning v. U.S. Dep't of Justice,* 919 F. Supp. 451 (D.D.C. 1994) to support the proposition that omitting Troya's alias from the search made it inadequate. ECF No. 31 at 2. But *Canning* is distinguishable. In *Canning*, the agency's search for records using the subject's name, Charles Zimmerman, returned no results. *See Canning*, 919 F. Supp. at 460. Because the FBI knew that Zimmerman was also known by Charles Cunningham, its refusal to search again using that alternate name made its search inadequate. *See id.* at 460–61. Whereas the *Canning* search risked overlooking records filed exclusively under the subject's alternate last name, the search here of Troya's name and birth date but not his alias was still reasonably likely to uncover all responsive records in the database.

And while "positive indications of overlooked materials" may show that a search was inadequate, that standard typically applies when the requester can show that the agency itself ignored those indications when it conducted its search. *Valencia-Lucena*, 180 F.3d at 327. Kowal says she possesses two hundred or so items that pertain to Troya and his codefendants. *See* ECF No. 23-14. But she has not explained why, merely because *she* has them, *DEA* must also still have them such that it could produce them in response to a FOIA request.[3] *See* ECF No. 23 at 20. Thus, the items themselves do not show that the search was inadequate. The DEA may simply not have them, or, even it does, "a reasonable and thorough search may have missed them" for whatever reason. *Iturralde*, 315 F.3d at 315.

### B.     Whether the DEA Provided a Sufficient *Vaughn* Index

Next, Kowal argues that the DEA's *Vaughn* indices do not explain claimed exemptions with enough particularity to evaluate their merits. *See* ECF No. 23 at 21–22. Because FOIA requesters face information asymmetry that favors the agency, courts evaluating claimed FOIA exemptions must rely on the agency's representation of the materials it withholds. *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987). A sufficiently detailed *Vaughn* index enables that evaluation. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). An agency must use a *Vaughn* index to explain withheld information by "specify[ing] in detail which portions of the document are disclosable and which are allegedly exempt." *Vaughn*, 484 F.2d at 827.

---

[3] Kowal cites *Valencia-Lucena* to support her argument that the DEA's search was inadequate, but she has not shown that the DEA overlooked records here in the way that the Coast Guard did in that case. *See Valencia-Lucena*, 180 F.3d at 327. There, the Coast Guard identified a National Archives center that was likely to have responsive records but declined to search it. *See id.* The issue was not that the Coast Guard's search missed certain documents, but that the design of the search ignored a location likely to contain them. *See id.*

A court evaluates a *Vaughn* index on its function, not its form. *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987). An adequate *Vaughn* index functions in part by enabling the reviewing court to determine if the agency properly invoked FOIA's exemptions. *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1463 (D.C. Cir. 1984). It enables the court in that regard if it "provide[s] a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir.1977). Therefore, an index must "state the exemption claimed for each deletion or withheld document and explain why the exemption is relevant." *Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979).

The Court agrees with Kowal that the DEA's *Vaughn* index is deficient. To begin with, the indices claim exemptions for each document, but they do not adequately "correlat[e] those claims with the particular part of a withheld document to which they apply." *Mead Data*, 566 F.2d at 251. Therefore, the Court has no basis to tell which exemption or exemptions are claimed for each portion of the documents withheld either in full or in part. *See Founding Church of Scientology*, 603 F.2d at 949. For example, the second *Vaughn* index reflects that pages 17–22 of File No. 1, a "DEA-6 Regarding Debrief of Third Party Related to Third Party Co-Defendant" was withheld on the basis of all the exemptions at issue here: (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F). *See* ECF No. 20-15 at 5. But on this record, the Court has no way to tell which portions of the document DEA asserts are subject to which exemption or combination of exemptions. The Court must be able to understand with more particularity which portions the DEA seeks to withhold under the various exemptions claimed. *See Vaughn*, 484 F.2d at 827–28.

Furthermore, the Court has no way of knowing on this record the factual basis for why the DEA asserts that each portion of the document is subject to a particular exemption. For example, the index provides a general explanation of why Exemption (b)(7)(E), which protects law enforcement techniques and procedures in material compiled for law enforcement purposes, applies wherever the DEA has asserted it. *See* ECF No. 20-15 at 2. But that explanation does not explain why the DEA applied Exemption (b)(7)(E) to pages 17–22 of File No. 1 in particular. True, the explanation in the index associates (b)(7)(E) with redactions for "Special Agent Names, initials, related files, G-DEP identifiers, file numbers, NADDIS numbers, and other identifying information." *Id.* at 2. And the Hertel Declaration represents how these pieces of information—as well as some others that do not appear to be referenced in the *Vaughn* index—generally fit within (b)(7)(E)'s scope. *See* Hertel Decl. ¶¶ 44–49. But the Court is left to guess which of these pieces of information appear somewhere on this particular document, justifying a given exemption or exemptions.

Therefore, the Court finds on this record that it cannot tell whether the DEA has properly invoked the asserted FOIA exemptions. The DEA will be provided the opportunity to submit a revised *Vaughn* index, and, if necessary, to submit redacted versions of the documents withheld in full or in part that help explain which portions of the documents have been withheld under which exemptions, and the factual basis for each portion of the documents withheld.[4]

## IV.   Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that as to the adequacy of the DEA's search, Defendants' Motion for Summary Judgment, ECF No. 20, is **GRANTED** and Plaintiff's

---

[4] Because the Court finds the *Vaughn* indices inadequate, it does not reach the questions of whether the DEA improperly withheld information already in the public domain or any segregable, non-exempt information.

Cross-Motion for Summary Judgment, ECF No. 23, is **DENIED**.  In all other respects, the Motions are **DENIED WITHOUT PREJUDICE**.  It is further **ORDERED** that the parties shall meet, confer, and submit a joint schedule for briefing renewed motions for summary judgment by June 15, 2020.

    **SO ORDERED.**

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: June 1, 2020